O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| MARLENE THOMAS, individually and as successor-in-interest to RYAN THOMAS,<br><br>Plaintiff,<br><br>v.<br><br>AEOLUS AIR CHARTER, INC. et al.,<br><br>Defendants. | Case № 2:23-cv-01523-ODW (JPRx)<br><br>**ORDER GRANTING MOTION TO REMAND [14]** |

## I.    INTRODUCTION

Plaintiff Marlene Thomas, individually and as successor-in-interest to Ryan Thomas, initiated this wrongful death suit in state court against Defendant Aeolus Air Charter, Inc.  (Compl., ECF No. 10-1.)  Plaintiff filed a First Amended Complaint adding Defendants Let's Jett, Inc.; Conner Jadwin; and Dave Ventrella and a claim for punitive damages.  (First Am. Compl. ("FAC"), ECF No. 1-1.)  Defendants removed, asserting subject matter jurisdiction on the basis of a federal question.  (Notice of Removal ("NOR"), ECF No. 1.)  Plaintiff now moves to remand.  (Mot. Remand, ECF No. 14.)  For the following reasons, the Court **GRANTS** Plaintiff's Motion.[1]

---

[1] The Court carefully considered the papers filed in connection with the Motion and deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.      BACKGROUND

In the First Amended Complaint, Plaintiff alleges that on July 26, 2021, a Bombardier Inc. CL-600-2B16 airplane bearing United States Registration Number N605TR was in the course of private flight for hire operated by Aeolus.  (FAC ¶ 1.) Jadwin is the CEO of Aeolus, and Ventrella is its Director of Operations.  (FAC ¶ 26.) The pilots of the subject flight were Alberto Montero De Collado De La Rosa ("Pilot Alberto") and Bret Ebaugh ("Pilot Ebaugh").  (FAC ¶ 34c.)

At approximately 1:18 p.m., in Truckee, California, the plane crashed, killing everyone onboard the aircraft,     (FAC ¶ 2) including  Ryan Thomas (hereafter, "Decedent").  It is alleged in the operative complaint at the time of and as a result of the crash Decedent was injured, suffered pain, was disfigured, and ultimately died. (FAC ¶ 3.)  In total, the incident resulted in six fatalities. (FAC ¶ 4.)  The National Transportation Safety Board has issued a preliminary report and additional factual reports.  (FAC ¶ 5.)

On January 27, 2022, Plaintiff brought suit against Aeolus in the Superior Court of California, County of Los Angeles, setting forth claims for (1) negligence; (2) products liability—strict; and (3) products liability—negligence.  (NOR ¶ 2; Compl. ¶¶ 20–56.)  Discovery commenced; the parties propounded and responded to written discovery, and Jadwin and Ventrella were deposed.  (Reply 2, 6, ECF No. 16.)

On December 29, 2022, Plaintiff requested the state court's leave to amend the Complaint.  (Notice of Ruling re: FAC Ex. A ("Tentative Ruling") 1, ECF No. 10-3.) In particular, Plaintiff sought, primarily on the basis of information obtained during discovery, to (1) add a prayer for punitive damages and supporting allegations; (2) add Let's Jett, Jadwin, and Ventrella as Defendants; and (3) withdraw her second and third causes of action for products liability.  (*Id.* at 2.)  The state court granted leave to amend.  (*Id.* at 4.)  Plaintiff filed the First Amended Complaint, and on January 30, 2023, Aeolus received a copy of it.  (NOR ¶ 2.)

The First Amended Complaint contains an extensive set of new allegations supporting Plaintiff's sole claim for negligence and the associated new prayer for punitive damages.  Broadly, Plaintiff asserts that the following facts, to be proven, support an award of punitive damages:

- Aeolus prioritized obtaining profits over developing safety programs in that it failed to design and implement a Safety Management System and a Crew Resource Management system, in conformance with the industry standards, (FAC ¶¶ 30–36, 38);

- Aeolus failed to hire a Director of Safety despite representing to the Federal Aviation Administration ("FAA") that it had done so, (FAC ¶ 37);

- Aeolus, through Jadwin and Ventrella, took improper shortcuts in obtaining Aeolus's FAA Part 135 charter certificate in that they misrepresented their base of operations as being in Fargo, North Dakota so that they could more quickly obtain their charter certificate from the FAA Flight Standards District Office headquartered there, (FAC ¶ 39);

- Aeolus rushed to hire Pilot Ebaugh without proper vetting, (FAC ¶¶ 42, 44);

- Aeolus failed to check with Pilot Alberto's flight instructors which likely would have revealed he had the very deficiencies that contributed to this accident taking place, (FAC ¶¶ 43–44);

- Aeolus failed to sufficiently investigate Pilot Alberto's immigration status which would have revealed that his visa did not allow him to fly for compensation in the United States, (FAC ¶¶ 46–47);

- Pilot Alberto violated Federal Aviation Regulations ("FARs") when he attempted to land the plane with a circle-to-approach maneuver, because the relevant FAR rule prohibited that type of aircraft (Category D) from performing such a maneuver at the Truckee airport.  (FAC ¶¶ 56–70.)  Rather than pulling back to make a second attempt (i.e., performing a "go-around"), Pilot Alberto chose to "try to force the landing."  (FAC ¶¶ 67–68.)  "During the final descent,

1    multiple aircraft warning devices went off . . . ."  (FAC ¶ 70.)  The two pilots

2    "fought over the control of the aircraft," and the plane went "into a stall."  (*Id.*)

3    The plane "fell from the sky in a terrifying and horrific manner, ultimately

4    crashing into trees and the ground."  (*Id.*)

5         In addition, Plaintiff supports her punitive damages request with allegations that

6    Aeolus operated the flight as an "unauthorized and illegally operated Part 135 flight."

7    (FAC ¶ 49.)   Part 135 refers to 14 C.F.R. Part 135, the FAA regulation governing

8    commuter and on-demand flight operations, also known as charter flights.   Plaintiff

9    alleges that the subject plane was not on Aeolus's charter certificate at the time of the

10   crash and that, as a result, Aeolus was not authorized to operate the flight as a Part 135

11   flight.  (FAC ¶ 51.)

12        Plaintiff alleges that, instead, Aeolus improperly operated the flight under

13   14 C.F.R. Part 91 ("Part 91"), (FAC ¶ 52), which applies more generally to aircraft

14   operated within the United States, 14 C.F.R. § 91.1.   Plaintiff alleges this was

15   improper because Decedent was a client of Aeolus who provided Aeolus with "things

16   of value" in exchange for the flight, and as a result, the flight was a charter flight

17   subject to Part 135.  (FAC ¶ 50d.)  At some point in the past, Defendants disputed this

18   conclusion by asserting that Decedent was a "company official" or "partner" of

19   Aeolus and that the flight was accordingly properly a Part 91 flight.  (FAC ¶ 53.)

20        On March 1, 2023, Defendants removed the case to this Court.[2]  On March 31,

21   2023, Plaintiff filed the Motion now under consideration, arguing that Defendants'

22   removal was untimely or that, in the alternative, there is no federal question sufficient

23   to confer subject matter jurisdiction.  (Mot. 1.)  The Motion is fully briefed.

24

25

26

27   [2] All four Defendants in this matter are represented by the same counsel.  Let's Jett, Jadwin, and
     Ventrella acknowledged having received the First Amended Complaint shortly before removal.
28   (NOR ¶ 2.)   All four Defendants removed, and all four Defendants oppose remand.  (*Id.* at 1; *See*
     Opp'n, ECF No. 15.)

### III.   LEGAL STANDARD

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction over only those matters authorized by the Constitution and Congress. U.S. Const. art. III, § 2, cl. 1; *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts have original jurisdiction where an action presents a federal question under 28 U.S.C. § 1331, or where there is diversity of citizenship under 28 U.S.C. § 1332. A defendant may remove a case from state court to federal court pursuant to the federal removal statute, 28 U.S.C. § 1441, based on federal question or diversity jurisdiction.

**A.   Motion to Remand for Lack of Subject Matter Jurisdiction**

"A motion to remand is the proper procedure for challenging removal." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). Courts strictly construe the removal statute against removal jurisdiction, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *see Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("Where doubt regarding the right to removal exists, a case should be remanded to state court.").

When removal jurisdiction is called into question, the party that removed the case bears the ultimate burden of establishing subject matter jurisdiction. *See Gaus*, 980 F.2d at 566.

**B.   Motion to Remand for Procedural Defects**

"[A] notice of removal [must] be filed within thirty days of receipt from the plaintiff of an initial pleading or other document from which it is ascertainable that the case is removable." *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1124 (9th Cir. 2013) (citing 28 U.S.C. §§ 1446(b)(1), (b)(3)). "[N]otice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005).

Untimeliness of removal is a procedural defect. *Maniar v. F.D.I.C.*, 979 F.2d 782, 784 (9th Cir. 1992). Under 28 U.S.C. § 1447(c), "[a] motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal." *N. Cal. Dist. Council of Laborers* v. *Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1037 n.4 (9th Cir. 1995). The purpose of this time limit is "to resolve the choice of forum at the early stages of litigation," and therefore it is strictly construed. *Id.* at 1038; *see also In re Edward Jones Holders Litig.*, 453 F. Supp. 2d 1210, 1213 (C.D. Cal. 2006) (holding that all objections to procedural defects in the removal process were waived where plaintiffs' motion to remand was untimely by two days).

## IV.      DISCUSSION

Plaintiff proffers two alternative, and somewhat mutually exclusive, bases for remand. First, Plaintiff argues that the original Complaint was sufficient to place Defendants on notice that the case involved a federal question and that, accordingly, Defendants' Motion is untimely. (Mot. 1–4.) Second, Plaintiff argues that, assuming the original Complaint did not involve a federal question, the newly added allegations remain insufficient to implicate a federal question, such that it is appropriate to remand for lack of subject matter jurisdiction. (*Id.* at 5–11.)

## A.      Analytical Framework

Plaintiff first argues that removal was untimely, but the Court need not resolve this issue because remand is appropriate whether removal was timely or untimely. Obviously, if removal was untimely, then the Court should remand this case on that basis.

But if removal was timely, then it must be true that the original Complaint did not involve a federal question. After all, if the allegations in the original Complaint did involve federal questions, then Aeolus's time to remove the case would have expired in early 2022, shortly after Plaintiff filed the case. Thus, Defendants must show that the First Amended Complaint raises federal questions but that the original

1  Complaint did not.

2      To make this showing, Defendants argue—quite naturally—that the new

3  allegations alone raise federal questions:

4      Defendants return to the fundamental principle underlying [their]
5      removal of the FAC in the first place.  Plaintiff has deliberately elected to
6      craft an amendment to the Complaint with sufficiently novel claims and a
7      prayer for punitive damages, arising explicitly under federal law.
       Plaintiff goes on to cite to alleged violations of FARs with particularity,
8      leaving no possible conclusion other than an express strategy to interpose
       claims of a federal character.
9

10  (Opp'n 15.)  Defendants, who bear the burden of showing a federal question, point

11  solely to the new allegations as the source of the federal questions.  Thus, the central

12  issue for resolution is whether Plaintiff's newly added allegations provide the Court

13  with federal question jurisdiction.  If they do not, then the result remains the same as if

14  removal was untimely: the Court should remand the case.  Herein, the Court addresses

15  this issue and determines that the newly added allegations are <u>not</u> sufficient to raise a

16  federal question, and accordingly, remand is appropriate, whether or not removal was

17  untimely.

18  **B.    Whether Newly Added Allegations Invoke a Federal Question**

19      The newly added allegations add details about the facts and circumstances of

20  the crash, and in doing so, they support Plaintiff's negligence claim and the associated

21  claim for punitive damages.  The allegations derive from information Plaintiff

22  obtained in discovery and elsewhere regarding Pilot Alberto's role in the accident and

23  Jadwin's and Ventrella's acts and omissions as Aeolus's principals, among other

24  things.

25      The new allegations involve federal law in three principal ways.  First, the

26  allegation that Aeolus operated the plane as an unauthorized charter flight implicates

27  aspects of Part 91 and Part 135, which are federal regulations.  Second, the allegation

28  that Aeolus rushed to get its charter certificate from a district where it was not

headquartered involves, to some extent, the FAA's regulatory scheme for issuing charter certificates. And third, the allegation that Pilot Alberto violated FARs in performing a circle-to-approach landing maneuver implicates the FARs to the extent necessary to describe and substantiate Pilot Alberto's violation. The question is whether, as Defendants contend, any or all of these invocations of federal law are sufficient to raise a federal question under the relevant standards. For the following reasons, the Court finds that the answer to this question is no.

### 1.   Jurisdiction over federal issues embedded in state-law claims

Under 28 U.S.C. § 1331, district courts have subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." An action arises under federal law within the meaning of 28 U.S.C. § 1331 if "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 690 (2006).

When, as here, the plaintiff pleads only state-law claims, removal is nevertheless proper in the "less frequently encountered" case where the claims "implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). This doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* Even so, not every state action that merely "embrac[es] a point of federal law" is removable. *Id.* at 314.

Thus, the Court has "jurisdiction over federal issues embedded in state-law claims" when (1) the "state-law claim necessarily raise[s] a stated federal issue"; (2) that issue is "actually disputed" and (3) "substantial," and is one (4) "which a federal forum may entertain without disturbing any congressionally approved balance

of federal and state judicial responsibilities." *Id.*; *see also Gunn v. Minton*, 568 U.S. 251, 258 (2013) (setting forth the four elements from *Grable* and noting that the "canvas" depicting "the contours of this slim category" of cases "looks like one that Jackson Pollock got to"). "Where all four of these requirements are met, . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313–14). The category of cases that satisfy the four-part test in *Grable* has been described as "special and small." *McVeigh*, 547 U.S. at 699; *City of Oakland v. BP PLC*, 969 F.3d 895, 904 (9th Cir. 2020) ("Only a few cases have fallen into this slim category." (internal quotation marks omitted)).

      2.   *Application of* Grable *requirements*

Focusing on the newly added allegations, the First Amended Complaint fails the four-element test the Supreme Court announced in *Grable*. The key observation here is that, to the extent any issues regarding federal aviation regulations will arise, they will arise only in the context of Plaintiff's broader attempt to demonstrate to the factfinder (1) the existence of negligence and (2) the appropriateness of punitive damages. The jury, in determining whether negligence exists, will consider whether Defendants met the relevant standard of care and will answer "yes" or "no." (*See* CACI 401; CACI VF-400.) With regard to punitive damages, the jury will be asked to expressly determine whether Defendants' conduct constituted "malice, oppression, or fraud," and if "yes," the jury will enter a dollar amount for the punitive damages. (Reply 11 (citing CACI VF-3902).) The jury will not be asked to answer any particular question about whether, for example, the flight legally and factually qualified as a charter flight and was thus subject to the rules of Part 135.

This observation has several repercussions. First, it means that, strictly speaking, Plaintiff's sole claim for negligence, and the associated punitive damages

request, does not "necessarily raise" any federal issue.  *See Grable*, 545 U.S. at 314.

The jury, in determining whether Defendants' conduct constitutes malice, oppression, or fraud, will consider numerous aspects of Defendants' conduct and will be free to place as much or as little weight on each aspect as they reasonably choose.  For example, the jury might decide that whether or not the flight was a charter flight and thus subject to Part 135 is not relevant to their determination regarding punitive damages and might pass on resolving this dispute altogether.  None of the federal issues—regarding the flight's status as a Part 135 charter, Aeolus's application for a charter certificate in North Dakota, and Pilot Alberto's violation of the FARs in employing a circle-to-landing approach—are a "necessary" part of the jury's overall determination of negligence or of malice, oppression, or fraud.  Thus, the federal issues are not necessarily raised.

Moreover, at least some of the purported federal questions do not appear to be "actually disputed." *Grable*, 545 U.S. at 314.  For example, it appears undisputed that Pilot Alberto in fact used a circle-to-landing approach in attempting to land the plane, and that the relevant FARs prohibited him from doing so.  This purported federal question is not actually a question because it is not in dispute.  Similarly, although there may be a factual dispute about Aeolus's motives for applying for a charter certificate in North Dakota, this does not place any federal regulation or agency action into actual dispute.  There is no suggestion this factual dispute will require the court to interpret a federal regulation, resolve a disputed issue about a regulation's application, or resolve a dispute about whether a federal agency acted in accordance with the law.

Additionally, and crucially, none of the purported federal questions are "substantial."  The substantiality inquiry "focuses on the importance of a federal issue 'to the federal system as a whole.'"  *City of Oakland*, 969 F.3d at 905 (quoting *Gunn*, 568 U.S. at 260).  The Ninth Circuit in *City of Oakland* provided examples of cases involving sufficiently substantial federal questions:

1
2
3
4
5
6

> An issue has such importance when it raises substantial questions as to the interpretation or validity of a federal statute, or when it challenges the functioning of a federal agency or program.  Moreover, an issue may qualify as substantial when it is a pure issue of law that directly draws into question the constitutional validity of an act of Congress, or challenges the actions of a federal agency, and a ruling on the issue is both dispositive of the case and would be controlling in numerous other cases.

7      *Id.* (citations and internal quotation marks omitted).

8          A federal issue is not substantial if it is "fact-bound and situation-specific," *id.*
9   at 905 (quoting *McVeigh*, 547 U.S. at 701), or if it "raises only a hypothetical question
10  unlikely to affect interpretations of federal law in the future," *id.* (quoting *Gunn*,
11  568 U.S. at 261).  Moreover, "[a] federal issue is not substantial merely because of its
12  novelty or because it will further a uniform interpretation of a federal statute."  *Id.*
13  (citations omitted).

14         Under these standards, none of the purported federal issues in this case are
15  sufficiently substantial.  There is no suggestion that this case involves a challenge to
16  the validity of a federal regulation or to the actions or practices of the FAA.  Plaintiff
17  does not raise a constitutional challenge, and there does not appear to be any pure
18  issue of federal law for the Court to resolve.

19         Instead, the purported federal issues are relatively insubstantial in the context of
20  the case, and are undoubtedly insubstantial in the context of the federal system as a
21  whole.  As discussed, to the extent the jury will engage with any federal aviation rules
22  or regulations at all, it will do so only for the purpose of making the overall
23  determination whether Defendants (1) were negligent and (2) committed malice,
24  oppression, or fraud.  Thus, any federal law-related findings by the jury will be
25  implied rather than expressly stated, and will be bound to the facts of this particular
26  case.

27         Moreover, the only actually disputed federal issue that could fairly be
28  characterized as having a modicum of federal substantiality is whether the subject

1    flight was a charter flight subject to the regulations of Part 135.  Making this
2    determination will ostensibly involve applying certain federal aviation concepts or
3    regulations to the facts of this case.  Even so, no party suggests that determining
4    whether the flight was a charter flight will require the Court to announce a new
5    interpretation of Part 135 or related regulations.  To the extent resolution of this issue
6    touches on a federal question, any such resolution is entirely bound to the particular
7    facts of this case such that the federal question cannot be considered "substantial."

8         In the end, the Part 135 charter issue is just one of many aspects of Defendants'
9    conduct the jury will weigh in determining whether to award punitive damages.
10   Moreover, this case is about more than punitive damages; punitive damages are a
11   particular remedy that comprises just one part of one element of Plaintiff's negligence
12   claim.  Thus, this case is not like the cases such as *Grable* where an element of a
13   party's cause of action requires the court to directly confront and apply a federal
14   statute or regulation as part of determining the element.  545 U.S. at 311.  For these
15   reasons, the federal issues raised are not substantial.

16        In summary, the purported federal questions fail under the first three elements
17   of the test for jurisdiction over federal questions embedded in state-law claims.  Thus,
18   the case does not arise under federal law, and remand is appropriate whether or not
19   removal was timely.[3]

20   ///
21   ///
22   ///
23   ///
24   ///

25

26   [3] In the Motion, Plaintiff notes that Defendants briefly alleged diversity jurisdiction in the Notice of
     Removal, and Plaintiff describes why there is no diversity jurisdiction in this case.  (Mot. 11.)
27   Defendants do not attempt to rebut this showing or otherwise argue that diversity jurisdiction is a
     basis for the Court's subject matter jurisdiction in this case.  (*See* Opp'n 1 ("There is no diversity of
28   citizenship alleged among the parties.").)   The Court therefore further concludes that diversity
     jurisdiction is lacking.

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion to Remand, (ECF No. 14), and **REMANDS** this matter to the Superior Court of California, County of Los Angeles, 111 N. Hill St., Los Angeles, CA 90012, Case No. 22STCV03393.  All dates and deadlines are **VACATED**.  The Clerk of the Court shall close this case.

**IT IS SO ORDERED.**

July 24, 2023

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**